U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 2 5 2012

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BOBBY ZIDELL,                        §
                                     §
            Plaintiff,               §
                                     §
                                     §
VS.                                  §   NO. 4:11-CV-845-A
                                     §
JUSTIN MORRIS, ET AL.,               §
                                     §
            Defendants.              §

MEMORANDUM OPINION
and
ORDER

Came on for consideration three motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed in the above-captioned action by defendants, Justin Morris ("Morris"), Scott Brown ("Brown"), and United States of America. Plaintiff, Bobby Zidell, filed a response to each motion, and each defendant filed a reply. Having now considered all of the parties' filings, plaintiff's complaint, and the applicable legal authorities, the court concludes that the motions should be denied.

I.

Plaintiff's Claims

Plaintiff is incarcerated at the Federal Correctional Institution at Fort Worth ("FCI-Fort Worth). The complaint by

which plaintiff initiated this action alleged the following:

At the time of the events giving rise to this action plaintiff was sixty years old, was an insulin-dependent diabetic, had high blood pressure, an old fracture of his left foot, and ambulated with a cane. Plaintiff was known as a "frail diabetic" due to his many hypoglycemic episodes and diabetic episodes. Compl. at 7. At the time of the events in question Brown and Morris were correctional officers at FCI-Fort Worth.

During the overnight hours of January 11-12, 2010, plaintiff "suffered nocturnal hypoglycemia and experienced a nightmare with a blood sugar blood level less than 20." Compl. at 10. Plaintiff awoke disoriented and began throwing clothes and magazines down the hall, and was dizzy or off-balance. Brown arrived on the unit and began moving towards plaintiff, talking to him as he walked. Plaintiff tossed a lightweight plastic chair at Brown; the chair hit the floor, skidded on the tile, and although it hit Brown in the shin, it caused no injury.

At some point Morris arrived to assist. Brown and Morris continued to approach plaintiff and backed him into his room. Plaintiff "picked up his cane and raised it in a swinging position." Id. at 11. Brown then

> grabbed plaintiff's right arm and left shoulder obtaining complete control of plaintiff's arms, and then pushed plaintiff onto the bed. Plaintiff flew

onto his bed and then bounced off landing on his left
side face down.  The force of the impact with the bed
caused plaintiff to lose his grip on the cane which lay
on the floor.  [] Morris then pounced on top of the
back of plaintiff driving his right knee into
plaintiff's lower back.  [] Morris then handcuffed
plaintiff's hands behind his back with metal handcuffs.
Plaintiff did not resist.

Upon information and belief, [] Morris then
grabbed plaintiff's shoulders, one shoulder with each
hand, and picked up his shoulders lifting plaintiff's
head off the ground.  [] Morris then thrust plaintiff's
shoulders down to the tile floor increasing the speed
and force as he went.  When plaintiff's shoulders hit
the tile floor, his face hit the floor also, causing
his head to snap back (i.e., "bounce").  Plaintiff's
front teeth were knocked out and his nasal septum was
crushed.

Id. at 11-12 (paragraph spacing and paragraph numbers omitted).

Following the above-described events, Morris and Brown gave

plaintiff a glucose shot to raise his blood sugar level.

Plaintiff asserted claims against United States, based on

the alleged acts of Morris and Brown, for assault by infliction

of bodily injury, assault by offensive physical contact,

negligent hiring, training, retaining, and supervision of

employees, and negligent medical care.  Against Morris and Brown,

plaintiff alleged a Bivens[1] claim for violation of his Eighth

Amendment rights.

---

[1]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

II.

## Motions of Brown and Morris

Brown and Morris contend that plaintiff's claims against
them should be dismissed because they are entitled to qualified
immunity.  An individual defendant is entitled to qualified
immunity "from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing
whether an individual defendant is entitled to qualified
immunity, the court considers whether plaintiff has alleged any
violation of a clearly established right, and, if so, whether the
individual defendant's conduct was objectively reasonable.
Siegert v. Gilley, 500 U.S. 226, 231 (1991).  The court may use
its discretion in deciding which of the two prongs in the
qualified immunity analysis to first consider in light of the
circumstances of a particular case.  Pearson, 555 U.S. at 236.

In considering claims of excessive force in the context of a
defendant's claim to qualified immunity, the court bears in mind
that not "every malevolent touch by a prison guard gives rise to
a federal cause of action."  Hudson v. McMillian, 503 U.S. 1, 9
(1992) (internal citations omitted).  "The Eighth Amendment's

4

prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " Id. at 9-10 (internal citations omitted).  In this context, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.

Morris and Brown argue that the facts alleged demonstrate that plaintiff was disruptive, combative, and resistive, and that any force applied was administered in a good-faith effort to maintain or restore discipline.  The court agrees that some of the facts alleged could lead to this conclusion.  However, the facts also alleged additional force applied beyond the time when Morris and Brown appeared to have "complete control of plaintiff's arms," Compl. at 11, and even after plaintiff was handcuffed lying face down on the floor.  Such facts could allege force beyond that needed to maintain or restore discipline, especially given the apparently serious nature of plaintiff's injuries.[2]

Morris and Brown each contend plaintiff has alleged

---

[2]Plaintiff alleged that his "front teeth were knocked out and his nasal septum was crushed." Compl. at 12.  Plaintiff also suffered a fractured arm/shoulder.

conflicting theories as to the origin of his broken nose and lost teeth: in the complaint he alleged that Morris caused those injuries, while in another document, he alleged the injuries occurred when Brown threw him on his bed, causing him to hit a window sill.  The resolution of a motion to dismiss is not the vehicle for resolving such factual disputes.

Morris and Brown may eventually establish their entitlement to qualified immunity.  However, the court concludes that plaintiff has pleaded sufficient allegations of excessive force to survive the motions to dismiss on that basis.

III.

### United States's Motion

United States's motion is based on a "civil privilege defense" available to correctional officers in Texas under Texas Penal Code section 9.53, which provides:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

Tex. Penal Code Ann. § 9.53 (West 2011).  United States cites to Texas cases holding that an officer of a correctional facility acts lawfully unless he "tortures, sexually harasses, mutilates

6

or otherwise violates the civil rights of prisoners within his charge while on official duty." Reed v. State, No. 04-10-00325-CR, 2011 WL 446638 at *2 (Tex. App.--San Antonio Feb. 9, 2011, no pet.) (citing Hall v. State, 158 S.W.3d 470, 474 (Tex. Crim. App. 2005)). This standard has been interpreted by Texas courts to require allegations that force used was excessive, in bad faith, unreasonable, or unnecessary to maintain security. See, e.g., Hall, 158 S.W.3d at 474-76; Scott v. Gallagher, 209 S.W.3d 262, 267 (Tex. App.--Houston [1st Dist.] 2006, no pet.); Birdo v. DeBose, 819 S.W.2d 212, 215 (Tex. App.--Waco 1991, no writ); Johnson v. Peterson, 799 S.W.2d 345, 347 (Tex. App.--Houston [14th Dist.] 1990, no writ).

As discussed supra in the analysis of the motions filed by Morris and Brown, plaintiff has alleged that the force used against him was excessive and beyond that necessary to maintain the safety or security of the facility, plaintiff, or Brown or Morris. Whether or not plaintiff is able to prevail on his claims against United States, he has pleaded sufficient factual allegations to survive United States's motion to dismiss.

IV.

<u>Order</u>

Therefore,

The court ORDERS that the motions to dismiss filed by Brown, Morris, and United States be, and are hereby, denied.

SIGNED May 25, 2012.

_____
JOHN McBRYDE
United States District Judge