IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 26 2013

CLERK, U.S. DISTRICT COURT
By _____
Deputy

BOBBY ZIDELL, §
§
      Plaintiff, §
§
§
VS. §   NO. 4:11-CV-845-A
§
JUSTIN MORRIS, ET AL., §
§
      Defendants. §

## MEMORANDUM OPINION
### and
### ORDER

Now before the court are two motions filed in the above
action: motion for summary judgment filed by defendants, United
States of America ("United States"), Justin Morris ("Morris"),
and Scott Brown ("Brown"), and motion for partial summary
judgment filed by plaintiff, Bobby Zidell.  Plaintiff filed an
untimely response to defendants' motion, titled a "reply," and
defendants filed a response to plaintiff's motion.  Having now
considered all of the parties' filings, the entire summary
judgment record, and the applicable legal authorities, the court
concludes that defendants' motion should be granted, and
plaintiff's motion should be denied.

I.

## Plaintiff's Claims

Plaintiff instituted this action by filing a complaint wherein he alleged that at approximately 2:00 a.m. on January 12, 2010, he suffered a hypoglycemic event that caused him to become disoriented and throw items from his room. Morris and Brown, correctional officers at FCI-Fort Worth, responded. In their attempts to subdue plaintiff, they used excessive force that resulted in plaintiff suffering a broken arm and nose. Surgery to repair plaintiff's arm was needlessly delayed due to the acts or omissions of Bureau of Prisons staff. Plaintiff asserted claims against United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. ("FTCA"), alleging assault by infliction of bodily injury, assault by offensive physical contact, negligent hiring, training, retention, and supervision of employees, and negligent medical care, and a Bivens[1] claim against Morris and Brown for use of excessive force in violation of plaintiff's Eighth Amendment rights.[2]

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2] Hollinger, an employee of FCI-Fort Worth whose first name was not identified, was also named as a defendant but was dismissed on January 13, 2012.

## The Summary Judgment Motions

United States argues for summary judgment on plaintiff's medical malpractice claim on the grounds that he cannot establish: (1) the applicable standard of care; (2) defendant violated that standard of care; and, (3) defendant's actions proximately caused his injuries.  United States argues that summary judgment is warranted on plaintiff's assault claims due to the correctional officer's privilege found in the Texas Penal Code, and because plaintiff's own disruptive behavior was the proximate cause of his injuries.  United States contends she is entitled to summary judgment on plaintiff's negligent hiring, training, retention, and supervision claim because he cannot show that Brown and Morris committed any tort.  Brown and Morris argue for summary judgment on the basis of qualified immunity.

Plaintiff did not clearly state the grounds on which his motion is based.

### III.

### Facts

The facts set forth below are undisputed in the summary judgment record:

A.   Plaintiff's Medical History

Plaintiff, who was sixty years old at the time of the events

in question, is incarcerated at FCI-Fort Worth. Plaintiff has a history of medical problems, including insulin-dependent diabetes, high blood pressure, a previous fracture of his left foot, and walks with the assistance of a cane. Plaintiff had also previously been diagnosed with gastroesophageal reflux disease, erosive gastritis, and an active esophageal bleeding ulcer.

In March 2009, Dr. Ducic ("Ducic"), a contract physician who had treated and evaluated plaintiff, diagnosed plaintiff with a "severe cocaine-nose deformity" with "complete loss and degradation of the interior nasal lining and recurrent crusting." App. to Br. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' App.") at 88. Ducic also noted that plaintiff had "significant collapse of the external [nasal] framework, . . . twisting of the nose and scar contracture." Id.

B.    Bureau of Prisons Policy on Use of Force

Program Statement 5566.06, Use of Force and Application of Restraints, describes the Bureau of Prisons policy on use of force. Pertinent portions of Program Statement 5566.06 provide that

> [s]taff may immediately use force and/or apply
> restraints when the [prisoner's] behavior . . .
> constitutes an immediate, serious threat to the inmate,

> staff, others, property, or to institution security and
> good order.
>
> . . . .
>
> Immediate or unplanned use of force by staff is
> required when an inmate is trying to self-inflict
> injuries which may be life-threatening or is assaulting
> any other person to include other inmates.

Id. at 40-41. Staff are also authorized to apply physical

restraints (including handcuffs) to control a prisoner who

appears to be dangerous because, inter alia, the inmate assaults

another individual or becomes, or displays signs of becoming,

violent. Staff may also use restraints to prevent a prisoner

"from hurting self, staff, or others, and/or to prevent serious

property damage," or when a prisoner continues to resist after

staff have achieved physical control of the prisoner. Id. at 43.

Program Statement 5566.06 also governs the "calculated use

of force," which is used

> for example, if the inmate is in a secure area or in an
> area where doors/grills may be secured, including cases
> when the inmate is making verbal threats or brandishing
> a weapon, provided staff believe there is no immediate
> danger of the inmate inflicting injury or harm to
> himself or herself or others.

Id. at 41. Calculated use of force includes the use of

psychologists, counselors, or other staff to attempt to resolve a

situation in a non-confrontational manner. Program Statement

5566.06 gives discretion to Bureau of Prisons staff to use

"common sense and good correctional judgment" to determine if a situation warrants the immediate use of force or if a calculated use of force is appropriate.  Id.

C.    Incident of January 12, 2010[3]

At approximately 2:00 a.m. on January 12, 2010, Morris went to investigate noises he heard coming from one part of the unit. Morris saw another prisoner, Carl Collins ("Collins"), in the hallway catching items being thrown out of a room assigned to plaintiff.  Plaintiff's room had no door, gate, or any other means of restricting plaintiff's ingress or egress to or from the room.  Morris ordered plaintiff to stop throwing things and accompany him to the office; however, plaintiff failed to respond to Morris's order.  Collins stated that he thought plaintiff was having "diabetic issues," Defs.' App. at 71, and Morris also noted that plaintiff appeared to be having low blood sugar and seemed oblivious to his surroundings.

Morris immediately called the lieutenant on duty and

---

[3]Plaintiff's verified complaint describes a version of events that differs in some respects, primarily in how plaintiff was injured. A verified complaint can be considered summary judgment evidence "if the asserted facts meet the requirements of Fed. R. Civ. P. 56(e) that they be within the personal knowledge of the affiant, that they otherwise would be admissible into evidence, and that the affiant be competent to testify." Huckabay v. Moore, 142 F.3d 233, 240 n.6 (5th Cir. 1998).  As plaintiff has consistently testified that he has no memory whatsoever of what occurred on January 12, 2010, the court is not considering the facts stated in the complaint as competent summary judgment evidence. Further, the only other witness to any part of the January 12 incident was another prisoner, Carl Collins, who admitted he did not see much of what happened, and saw nothing that occurred inside plaintiff's room.

reported plaintiff's actions. Morris also called on his radio for staff assistance due to plaintiff's behavior. Plaintiff then entered the hallway swinging a cane at Morris "like a baseball bat." Id. at 72. Morris again called for assistance, stating that plaintiff had become combative, and Brown responded to Morris's call.

When Brown arrived on the unit, plaintiff had returned to his room and was throwing objects into the hall, where Morris and Collins were standing. When plaintiff again entered the hallway, Brown began talking to plaintiff in an attempt to calm him. Brown thought that plaintiff appeared to be suffering from low blood sugar and needed glucose. Someone gave Brown a tube of glucose, which he put in his pocket.

As Brown began to approach plaintiff, plaintiff picked up a plastic chair and threw it at Brown.[4] Brown continued to approach plaintiff, asking and then ordering plaintiff to calm down, changing his tone and manner in an attempt to find an approach to which plaintiff would respond. Plaintiff still did not respond; however, when Brown was a few feet away, plaintiff returned to his room. Morris also ordered Collins to clear the

---

[4]In Collins's affidavit he claims he did not see plaintiff throw anything at Morris or Brown. Plaintiff contends this statement creates a fact issue sufficient to defeat summary judgment. The court disagrees. First, Collins admits in his affidavit he did not see everything that occurred during the incident. Second, plaintiff does not dispute the remaining factual allegations, and whether or not he threw a chair does not affect the outcome of his claims against any of the defendants.

area and move to the end of the hall, which Collins did.

Brown and Morris moved towards plaintiff's room. Plaintiff reappeared, brandishing his cane. Although Brown and Morris ordered plaintiff to drop the cane, he instead swung the cane at Brown. Brown then entered plaintiff's room while Morris stood at the door. Brown grabbed plaintiff's right forearm with his left hand "while elevating [Brown's] left elbow and shoulder and leaning away to the right to avoid being struck." Id. at 67. Brown also used his right hand to grab plaintiff's left shoulder. As plaintiff resisted, Brown pushed plaintiff backwards towards his bunk. When plaintiff's legs made contact with the bunk, it forced plaintiff into a sitting position on the bed.

Brown released his hold on plaintiff and moved to retrieve the glucose from his pocket. Plaintiff then fell or pushed himself off the bed and onto the floor, face down, with his arm pinned beneath him. Brown knelt and handcuffed plaintiff's free arm, and Morris knelt to assist. However, plaintiff continued to resist Morris's efforts to pull plaintiff's other arm from beneath him to apply the handcuffs. Once the arm was freed plaintiff stiffened it, and Brown and Morris used force to pull plaintiff's arms together and apply handcuffs. Once plaintiff was restrained, Brown notified the unit control center and the Operations Lieutenant about the use of force. Brown also

administered the glucose from the tube into plaintiff's mouth.

D.    Plaintiff's Injuries and Treatment

Plaintiff was subsequently transported via ambulance to a Fort Worth hospital where x-rays were taken of his left arm. Doctors diagnosed plaintiff with a spiral left humeral shaft fracture and applied a splint, and recommended a follow-up appointment in one week.  The doctor also diagnosed plaintiff as having osteopenia.[5]

A CT scan was taken of plaintiff's face and nose at the emergency room.  The radiologist noted extensive postsurgical changes to the nose, absence of significant portions of the nasal passageway, and "[s]uspected old traumatic and/or postsurgical changes [] involving the nasal bones with surgical fixation screws present."  Id. at 108.  However, the radiologist was unable to "exclude acute trauma involving the anterior right nasal bone" without correlating plaintiff's history, physical findings, and prior studies.  Id.

When plaintiff returned to FCI-Fort Worth, medical staff prepared an injury assessment, noting that plaintiff's left arm was immobilized in a cast, there was no mobility of his teeth,

---

[5]    Osteopenia refers to bone mineral density that is lower than normal but not low enough to be considered osteoporosis.  Age, history of smoking, excess alcohol consumption, inactivity, vitamin deficiencies, and genetics can all contribute to the development of osteopenia. Defs.' App. at 61.  The summary judgment evidence shows that plaintiff's history was positive for several of the risk factors.

and he had a small superficial laceration on the bridge of his nose. A follow-up x-ray also revealed that plaintiff's nose sustained a fracture.

Over the next several months plaintiff was evaluated and treated by various physicians for his many physical ailments, including receiving treatment for his broken arm, peripheral vascular disease, and undergoing multiple surgeries on his nose.

IV.

## Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the

nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

V.

Analysis

A.   Claims Against Morris and Brown

Morris and Brown contend that plaintiff's claims against them should be dismissed because they are entitled to qualified immunity. The court agrees.

Government officials are generally protected from liability for performing discretionary duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a defendant asserts

11

an entitlement to qualified immunity, the burden is on the plaintiff to negate the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam). At the summary judgment stage, "the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it" in considering a defendant's claim to qualified immunity. Id. (ellipses in original). In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable in light of clearly established law. Siegert v. Gilley, 500 U.S. 226, 231-33 (1991); see also Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005). The court may use its discretion in deciding which of the two prongs in the qualified immunity analysis to first consider in light of the circumstances of a particular case. Pearson, 555 U.S. at 236.

The "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (ellipses in original)(internal citation and quotation marks omitted). When faced with a claim of excessive force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. In considering claims of excessive force in the context of a defendant's assertion of qualified immunity, the court bears in mind that not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (internal citations omitted). "[C]orrections officers must balance the need to maintain or restore discipline through force against the risk of injury to inmates," and officers may need to act "quickly and decisively" in both situations. Id. at 6.

When inquiring into the use of force, the court considers five nonexclusive factors: (1) the extent of any injury; (2) the need for the use of force; (3) the relationship between the need for force and the amount of force actually used; (4) the threat reasonably perceived by the official; and (5) the officers' efforts to temper the severity of a forceful response. Id. at 7. The "amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." Baldwin v. Stalder, 137 F.3d 836, 840 (5th Cir. 1998) (alteration in original) (internal citation omitted). Accordingly, the court recognizes that "corrections officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance." Id. (internal citation omitted).

As to the first factor, there is no dispute that plaintiff incurred injuries following the use of force: he sustained fractures to his left arm and nose, and possibly the loss of some teeth.[6] However, the summary judgment record also shows that plaintiff's pre-existing physical conditions, including osteopenia, made plaintiff more susceptible to broken bones. The undisputed summary judgment evidence shows that any amount of force, such as plaintiff's fall from the bed to the floor, or bringing plaintiff's arms together to apply handcuffs, could have caused the fracture to his arm. Similarly, the summary judgment record shows plaintiff had previously fractured his nose, and had a long history of nasal problems caused by his prior cocaine use, including a compromised nasal framework, so that plaintiff's fall to the floor was as likely to have caused his nose fracture as was any use of force.[7] Hence, that plaintiff sustained injuries, even serious injuries, following a use of force is not dispositive.

---

[6]Plaintiff has made inconsistent claims in this action concerning his teeth. He alleged that Morris shoved his head to the floor, causing the loss of his front teeth, but also asserted that the teeth were knocked out when he hit a window sill after being thrown onto the bed. Plaintiff has repeatedly admitted he has no personal knowledge of what happened during the incident on January 12, 2010, and has identified no witness with personal knowledge, other than Morris and Brown. Further, a Bureau of Prisons internal investigation into the January 12, 2010 incident found no physical evidence to substantiate plaintiff's claim that his mouth or teeth hit the window sill. Finally, uncontroverted evidence in the summary judgment record shows that extractions performed in July 2010 by the FCI-Fort Worth dentist did not appear to be the result of any trauma.

[7]Ducic, who had treated plaintiff for his nasal problems both before and after the January 12, 2010 incident, testified in his deposition that plaintiff's fractured nose was consistent both with plaintiff's face being shoved to the floor and with plaintiff falling from a sitting position and hitting his face on the floor.

Second, regarding the need for force, it is undisputed that during the overnight hours of January 11-12, 2010, plaintiff was disrupting the unit at FCI-Fort Worth by throwing items out of his room into the hall, behavior prohibited by Bureau of Prisons' policies. It is also undisputed that plaintiff became aggressive and threatening towards Morris and Brown when they attempted to help plaintiff, conduct also prohibited by Bureau of Prisons' policies. Plaintiff's room had no door, gate, or anything else by which Morris and Brown could prevent plaintiff's ingress or egress into the hallway. Given plaintiff's disruptive and aggressive conduct, the potential was great that plaintiff could continue to disrupt the unit or cause serious harm to himself or others. Under these circumstances it was reasonable for Morris and Brown to use the discretion afforded them and conclude that an immediate (rather than calculated) use of force was required.

The court will consider the third, fourth, and fifth factors together. Morris and Brown made numerous attempts to calm plaintiff prior to using force. Morris spoke with plaintiff when plaintiff's disruptive behavior began, but plaintiff did not respond, and instead became aggressive with Morris. Brown also used varying tones of voice, and alternated between attempting to sooth plaintiff and ordering him to comply, all to no avail. Plaintiff also armed himself with his cane, which he used in a threatening manner towards the officers. None of the actions

taken by Morris and Brown prior to using force had any noticeable effect on plaintiff and failed to diffuse the situation, making necessary the use of force. See, e.g., Brewer v. Prier, 334 F. App'x 618, *619 (5th Cir. 2009) (no excessive force where officer unsuccessfully attempted to obtain compliance through non-forceful means).

Once Brown and Morris had disarmed plaintiff, he continued to resist. Even after plaintiff fell or pushed himself off his bed onto the floor, he continued to resist Morris and Brown by laying on his arm, refusing to allow the officers to handcuff him. This required Brown and Morris to force plaintiff's arm out from under him so they could restrain him, as authorized by Bureau of Prisons program statement 5566.06. Given plaintiff's disruptive, aggressive conduct, and his failure to respond to any of the attempted non-forceful interventions by Brown and Morris, it was reasonable for Brown and Morris to conclude that plaintiff posed a danger to himself and others and to use force when other efforts failed.

Also relevant to the court's analysis is the complete lack of evidence in the summary judgment record that either Morris or Brown acted with any malicious or sadistic intent to cause harm. Although plaintiff made numerous allegations concerning the employment history and personal characteristics of Morris and Brown, none of those allegations are substantiated by any

competent summary judgment evidence. For example, the complaint contends that "[u]pon information and belief," Morris: suffers from post-traumatic stress disorder, was investigated by "State of Texas agents" for use of excessive force, and has been counseled by coworkers for his attitude towards prisoners. Compl. at 8. Plaintiff admitted, however, that these allegations were his opinion or were based on speculation, and he has directed the court to no summary judgment evidence to support these assertions.[8]

The court bears in mind that in the summary judgment context, once a defendant pleads he is entitled to qualified immunity, "the burden <u>shifts</u> to the plaintiff to rebut it." <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007) (emphasis in original) (citation omitted). Here, plaintiff has made no effort to rebut Morris and Brown's claim to qualified immunity.

Considering all of the foregoing, the court concludes that Morris and Brown are entitled to qualified immunity, and that plaintiff has not carried his burden to show otherwise.

B.  <u>Claims Against United States</u>

1.  <u>Medical Malpractice</u>

In his reply, plaintiff concedes that summary judgment for United States is warranted on his claim of medical malpractice due to the failure of plaintiff's medical expert to testify that

_____

[8]Morris submitted a declaration refuting each of plaintiff's allegations.

any breach of the standard of care occurred.  Accordingly, the court need devote no analysis to this claim.

2. <u>Assault</u>

Under Texas law, the intentional tort of assault is tantamount to criminal assault.  <u>Villafranca v. United States</u>, 587 F.3d 257, 260 (5th Cir. 2009).  A person commits assault if he "intentionally, knowingly, or recklessly" causes bodily injury, threatens another with bodily injury, or causes physical contact he knows or should know the person will find offensive or provocative.  Tex. Penal Code § 22.01.  However, section 9.53 of the Texas Penal Code, titled "Maintaining Security in a Correctional Facility," provides that:

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

Tex. Penal Code § 9.53.  Thus, under Texas law, correctional officers are privileged "to use reasonable force against an inmate to maintain their own safety, the safety of others, or the security of the prison as a whole."  <u>Hall v. State</u>, 158 S.W.3d 470, 475 (Tex. Crim. App. 2005) (citing <u>Johnson v. Peterson</u>, 799 S.W.2d 345, 347 (Tex. App.--Houston [14th Dist.] 1990, no writ)).

The Fifth Circuit in <u>Villafranca</u> held that federal officers were entitled to invoke a "civil defense privilege" found in

section 9.51 of the Texas Penal Code, pertaining to use of force by a peace officer in making a search or arrest. 587 F.3d at 261. Because the officers could invoke the privilege found in section 9.51 to avoid liability, the Fifth Circuit concluded that the government could likewise invoke the same privilege to also avoid liability under the FTCA. Id. at 264. Although the court has found no Fifth Circuit case applying Texas Penal Code section 9.53, the court is satisfied that the reasoning of Villafranca applies equally to the correctional officer's privilege in that section.

The summary judgment evidence shows that plaintiff was throwing items out of his room, brandishing his cane, and seemed oblivious to his surroundings. Additionally, plaintiff was in an open room which could not be secured by a door or gate. Morris and Brown attempted to subdue plaintiff through verbal commands and requests. However, plaintiff did not respond to their efforts. Morris and Brown stated that they believed force was necessary to maintain the security of the unit, as well as the safety or security of other prisoners and themselves. Plaintiff has offered no controverting summary judgment evidence to these facts. Under these circumstances, Morris and Brown were privileged in their use of force and would be immune from any claim of assault under Texas Penal Code section 9.53. Under

<u>Villafranca</u>, United States is entitled to invoke the same privilege. Summary judgment is therefore warranted on plaintiff's assault claims against United States.[9]

### 3. Negligent Hiring, Training, Retention, and Supervision

To prevail on his claim of negligent hiring, training, retention, and supervision, plaintiff must "establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." <u>Brown v. Swett & Crawford of Tex., Inc.</u>, 178 S.W.3d 373, 384 (Tex. App.--Houston [1st Dist.] 2005, no pet.); <u>see also</u> <u>Gonzales v. Willis,</u> 995 S.W.2d 729, 739 (Tex. App.--San Antonio 1999), <u>overruled in part on other grounds by</u> <u>Hoffmann-La Roche Inc. v. Zeltwanger</u>, 144 S.W.3d 438, 447-48 (Tex. 2004). Here, the court has determined that Morris and Brown committed no tort against plaintiff. Accordingly, plaintiff's claim of negligent hiring, training, retention, and supervision fails as well.

### C. Plaintiff's Motion

It appears that plaintiff in his motion is attempting to assert new claims against Morris and Brown for negligent failure

---

[9]Defendants argue that plaintiff's assault claims also fail because plaintiff's own disruptive behavior, assault on Morris and Brown, and resistance were the proximate cause of his injuries. The court finds this argument persuasive, but need not decide the issue, as the assault claims are dismissed on other grounds in the motion.

to request medical assistance, negligent use of force, and negligent failure to restrain plaintiff while he was sitting on his bed. None of these claims were pleaded in plaintiff's complaint, nor were they asserted in plaintiff's administrative tort claim presented to the Bureau of Prisons. Plaintiff's newly-fashioned negligence claims against Morris and Brown fail for these reasons.

Plaintiff's new claims against Morris and Brown fail for the additional reason that they are all grounded in negligence. Negligence, however, is not actionable under Bivens. Daniels v. Williams, 474 U.S. 327, 332-33 (1986) (holding negligence cannot sustain a claim under 42 U.S.C. § 1983).[10]

Much of plaintiff's motion is devoted to making disparaging statements concerning Brown and Morris. For example, plaintiff contends that: both Morris and Brown admitted they are "liars," Morris admitted he violated institutional rules on nearly every shift, Brown had two previous misdemeanor convictions for driving under the influence ("DUI") in 2002 and 2007, and both Morris and Brown submitted "sham declarations" full of "legalistic argumentation." Br. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s

---

[10]A Bivens action is the federal counterpart of a claim under 42 U.S.C. § 1983, and the same analysis applies to both. Izen v. Catalina, 398 F.3d 363, 367 n.3 (5th Cir. 2005) (per curiam); Abate v. S. Pac. Transp. Co., 993 F.2d 107, 110 n.14 (5th Cir. 1993).

Mot.") at 20.

The court finds none of these allegations persuasive or
dispositive of any of the matters at issue in this action.
Although plaintiff claims he heard both Morris and Brown admit in
their depositions that they were "liars," he directs the court to
no summary judgment evidence where they admitted to lying about
any of the facts pertaining to the events of January 12, 2010. A
generalized statement that a person has told lies in the past is
no evidence that his or her sworn statement pertaining to a
specific event is also a lie. Likewise, plaintiff's evidence
shows that the "institutional rules" plaintiff claims Morris
admitted to violating pertained to smoking in unauthorized areas
--again, a subject not pertinent to the instant action. And,
although a DUI conviction is a serious matter, plaintiff fails to
explain how those misdemeanor convictions in 2002 and 2007 are
relevant to anything that happened during the January 12, 2010
incident or anything else in this action. Plaintiff has also
provided nothing to support his contention that the declarations
of Brown and Morris are "shams," other than his own conclusory
assertion.

Plaintiff also claims that Morris was "cited for acting
unprofessionally and not following protocol." Pl.'s Mot. at 12.
The specific page of plaintiff's appendix to which he cites in

support of this statement indicates that a complaint was made against Morris by a prisoner's family member in July 2011 because of the manner in which Morris responded to a telephone call. Morris's handling of a telephone call, more than a year after the January 12, 2010 incident, is evidence of nothing pertaining to the events of that night. The same is true of two incidents involving Brown mentioned in plaintiff's motion. Both of the incidents involved Bureau of Prisons property, did not involve the use of force or pertain in any way to Brown's interaction with a prisoner, and both occurred in late 2011--again, long after the January 12, 2010 incident at issue here.

The court also finds irrelevant the affidavit of plaintiff's expert witness, Harvey Cox ("Cox"), purportedly an expert in correctional facility practices and use of force. The court has "broad discretion to rule on the admissibility of expert's affidavits in the summary judgment context." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 357 (5th Cir. 2001). The court may properly disregard an expert witness's affidavit where it is conclusory and fails to give insight into the expert's reasoning process. Id.

To the extent plaintiff relies on Cox's affidavit to support his claims of negligence against Morris and Brown, those claims are not properly before the court and thus Cox's affidavit is of

no use.  The court also finds Cox's affidavit to be insufficient to support plaintiff's motion for summary judgment as to his claims against United States.  Cox's affidavit recites the facts as found in the investigative report prepared by the Bureau of Prisons and quotes lengthy portions of the Bureau of Prisons program statements, then leaps to a number of conclusions as to defendants' conduct.  For example, the affidavit opines that staff should have allowed plaintiff to remain in his room until medical staff could arrive, and that defendants' actions "fell substantially below the correctional policies and standards of penal facilities" in this country.  App. in Supp. of Pl.'s Mot. for Partial Summ. J. at 15.  Absent from the affidavit, however, is any indication of the reasoning process or rationale underlying Cox's opinion.  Accordingly, the court finds that Cox's affidavit fails to support a grant to plaintiff of summary judgment on his claims.  Celestine, 266 F.3d at 357 (affirming district court's exclusion of expert's summary judgment affidavit where affidavit gave conclusions without any explanation of the expert's reasoning process).

The court finds nothing in plaintiff's motion for summary judgment as would show he is entitled to judgment as a matter of law, and the motion is denied.

VI.

Order

Therefore,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted, and that plaintiff's motion for summary judgment be, and is hereby, denied.

The court further ORDERS that all claims and causes of action asserted by plaintiff, Bobby Zidell, against defendants, United States, Morris, and Brown, be, and are hereby, dismissed with prejudice.[11]

SIGNED February 2 6, 2013.

_____
JOHN McBRYDE
United States District Judge

---

[11]In light of the court's rulings on the motions for summary judgment, defendants' motion for extension of time and continuance of trial date is denied as moot.